**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**MICHAEL L. PINKERMAN, SR. and**
**LAURA J. PINKERMAN,**

      **Plaintiffs,**

**vs.**                                    **CIVIL ACTION NO. 3:21-CV-00579**

**CABELL COUNTY COMMISSION, *ET AL.*,**

      **Defendants.**

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

Pending before the Court are the following motions: ***<u>Defendants' West Virginia State Police and Sgt. Losh's Motion to Dismiss</u>*** and supporting ***<u>Memorandum of Law</u>*** (ECF Nos. 33, 34); ***<u>Defendants Village of Barboursville and Darren McNeil's Motion to Dismiss</u>*** and supporting ***<u>Memorandum of Law</u>*** and ***<u>Amended</u>*** Memorandum of Law (ECF Nos. 39, 40, 70); and ***<u>Defendants', Cabell County Commission, Cabell County Sheriff's Department, Sheriff Charles Zerkle, Lt. Michael Adkins, Lt. Dale Enochs, II, Sgt. Robert McQuaid, Sgt. Terry D. McFann, II, Deputy Hunter Neil, Sgt. Steven Vincent, Corporal James Johnston, Corporal Jared Cremeans, Deputy Brad Hinchman, Deputy Nathaniel Rodgers, Sgt. Matthew Siebel, Deputy Dakota Render, Lt. Kevin White, Deputy Joshua Parsons, and Deputy Preston Stephens, Motion to Dismiss</u>*** and ***<u>Memorandum in Support</u>*** of same (ECF Nos. 73, 74).

By Order entered on October 29, 2021, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition. (ECF No. 32)

Having examined the Complaint (ECF No. 1), the undersigned concludes that this case be stayed and removed from the active docket of this Court for the reasons stated *infra*.

## PROCEDURAL HISTORY

On October 27, 2021, Plaintiffs (when appropriate, hereinafter referred to as "Michael Sr." and "Laura"), *pro se*[1], filed their Complaint against the following Defendants: Cabell County Commission; Cabell County Sheriff's Department (hereinafter referred to as "CCSD"); Sheriff Charles Zerkle; Lieutenant Michael Adkins; Lieutenant Dale Enochs, II; Sergeant Robert McQuaid, Retired; Deputy 1st Class Jared Cremeans; Corporal James Johnston; Deputy Brady Hinchman; Deputy Nathaniel Rodgers; Sergeant Steven Vincent; Corporal Terry McFann, II; Deputy Hunter Neil; Corporal Matthew Siebel; Sergeant Kevin White; Deputy Dakota Render; Deputy Joshua Parsons; Deputy 1st Class Preston Stevens[2]; S[e]rgeant T.S. Blatt[3]; West Virginia State Police Department; First S[e]rgeant G.N. Losh; Barboursville Police Department; Darren McNeil, Barboursville Police Chief; and "Unnamed Agents, Officers, and Employees of the Cabell County Sheriff's Office, Barboursville P.D. and W.V. State Police Department involved in the 10/30/2019 raid, before and after, or those who contributed to the wrongful death of Michael L. Pinkerman, Jr. in their individual capacities." (ECF No. 1)[4]

On December 9, 2021, Defendants West Virginia State Police Department (hereafter referred to as "WVSP") and Losh filed their Motion to Dismiss and Memorandum of Law in

---

[1] Because Plaintiffs are proceeding *pro se*, the documents they have filed in this case are held to a less stringent standard than had they been prepared by a lawyer, therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972).

[2] Defendant advises Plaintiffs misspelled Deputy Preston Stephens's name as "Stevens." (ECF No. 74 at 2, n.1) Accordingly, for purposes of this Proposed Findings and Recommendation, the undersigned references this Defendant by the appropriate spelling of his name.

[3] There is no indication in the docket that T.S. Blatt was ever served with process and there is no answer or response filed on behalf of this named Defendant. Although Plaintiffs identify this Defendant as a member of the CCSD, the County Defendants, see *infra*, deny T.S. Blatt is a Cabell County Sheriff's Deputy. (See ECF No. 74 at 4, n.4)

[4] Plaintiffs also specify as additional defendants in their Complaint: "Unnamed Agents, Officers, and Employees of the Cabell County Sheriff's Office, Barboursville Police Department, the West Virginia State Police Department and all involved in the October 30, 2019 raid before, after, and those involved in the investigation of the officer involved shooting at 4036 Blue Sulphur Road, Ona, W.V. and those who contributed to detaining, arresting, charging, or prosecuting of Michael L. Pinkerman, Sr." (ECF No. 1 at 7, ¶ 28)

support of same (ECF Nos. 33, 34); subsequently, the undersigned issued a <u>Roseboro</u> notice[5] to Plaintiffs to respond to Defendants' motion by December 23, 2021 (ECF No. 35).

On December 9, 2021, Defendants Cabell County Commission, Zerkle, Adkins, Cremeans, Enochs, Hinchman, Johnston, McFann, McQuaid, Neil, Parsons, Render, Rodgers, Siebel, Stephens, Vincent, and White (hereinafter collectively referred to as "the County Defendants") filed their Answer to Plaintiffs' Complaint and Defendants Cabell County Commission, Cremeans, and Johnston filed their Counterclaim against Plaintiffs (ECF No. 38).

On December 9, 2021, Defendants McNeil and the Village of Barboursville[6] filed their Motion to Dismiss and Memorandum of Law in support of same (ECF Nos. 39, 40). On December 10, 2021, the undersigned issued a <u>Roseboro</u> notice to Plaintiffs to respond to Defendants' motion by December 27, 2021 (ECF No. 41).[7]

On December 16, 2021, the County Defendants filed their Motion to Dismiss and supporting Memorandum (ECF Nos. 73, 74) as well as two attached exhibits (ECF Nos. 73-1, 73-2): the first exhibit being a copy of an affidavit and complaint for a search warrant for 4036 Blue Sulphur Road, Ona, West Virginia 25545, dated October 30, 2019, concerning a charge for violation of W. Va. Code § 61-3-18, receiving or transferring stolen goods, to-wit: a Beretta 9mm pistol identified by serial number 934648765490, and any magazines, paperwork, receipts or any items related to the Beretta 9mm pistol; the second exhibit being a copy of an indictment out of the Circuit Court of Cabell County, West Virginia, filed in October 2020 against Michael Lane

---

[5] Pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975); because Plaintiffs are acting *pro se*, the Court issued its Order notifying Plaintiffs of their right to file a response to Defendants' Motion and further ordered that Plaintiffs file any response with the Clerk of this Court.

[6] This Defendant asserts that it was improperly named as the Barboursville Police Department, accordingly, the undersigned refers to this Defendant by the proper name herein.

[7] These Defendants filed an Amended Memorandum of Law in support of their Motion to Dismiss on December 14, 2021 (ECF No. 70), thus causing the undersigned to issue another <u>Roseboro</u> Notice to Plaintiffs permitting them to file any response thereto by December 29, 2021 (ECF No. 71).

Pinkerman concerning events occurring on October 30, 2019, which includes two counts of attempted first degree murder, two counts of malicious assault on a law enforcement officer, one count of wanton endangerment, and one count of obstructing an officer, in violation of W. Va. Code §§ 61-2-1, 61-11-8, 61-2-10b(b), 61-7-12, and 61-5-17(a). On December 17, 2021, the undersigned issued a <u>Roseboro</u> notice to Plaintiffs to respond to Defendants' motion by December 30, 2021 (ECF No. 75).

On December 23, 2021, Plaintiffs filed their Response in opposition to Defendants WVSP and Losh's motion (ECF No. 76); on December 29, 2021, Plaintiffs also filed their Response in opposition to Defendants Village of Barboursville and McNeil's motion (ECF No. 78); and on December 30, 2021, Plaintiffs filed their Response in opposition to the County Defendants' motion (ECF No. 79).

On January 3, 2022, Defendants WVSP and Losh filed their Reply in support of their motion (ECF No. 80), and on January 5, 2022, the County Defendants and Defendants Village of Barboursville and McNeil filed their Replies in support of their respective motions (ECF Nos. 81, 82). The County Defendants also filed another supporting exhibit in support of their Reply, another copy of the October 2020 indictment against Michael Lane Pinkerman, along with the underlying criminal complaint filed on October 30 and 31, 2019 in the Magistrate Court of Cabell County by Defendant McQuaid. (ECF No. 81-1).

On January 10, 2022, Plaintiffs filed their "Final Remarks" (ECF No. 84).

## BACKGROUND OF CASE[8]

This lawsuit stems from the execution of a search warrant and officer involved shooting on October 30, 2019, resulting in gunshot injuries to law enforcement and to Plaintiffs' adult son, Michael L. Pinkerman, Jr. (hereinafter referred to as "the Decedent"), resulting in his death.

On October 30, 2019, Defendants McQuaid, Vincent, Stephens and Cremeans of the CCSD travelled to the Plaintiffs' residence, located at 4306 Blue Sulphur Road, Ona, Cabell County, West Virginia 25545, to speak with the Decedent who was a suspect in an October 28, 2019, shooting resulting in destruction of property at the Ona Volunteer Fire Department where he had just recently been terminated for stealing. (See ECF No. 73-1) After knocking on the front door of Plaintiffs' home, the Decedent exited the side door carrying a firearm (Id.) After securing the firearm, a Beretta 9mm, Defendant Cremeans took photographs of it and later ran a check of that firearm through Cabell County 911 for serial number "9346487065490" which disclosed that it was listed in NCIC as a stolen gun by the Gilbert Police Department in Arizona. (Id.) Based upon this information, Defendant Cremeans requested a search warrant of the Plaintiffs' home; Cabell County Magistrate Goheen found probable cause and issued the warrant. (Id.)

Later that day, several CCSD deputies returned to Plaintiffs' residence and attempted to serve the search warrant regarding the stolen firearm that the Decedent had in his possession earlier that day. (ECF No. 73-2) After identifying themselves and repeatedly advising Michael Sr. to open the door; though deputies managed to breach the door at times, Michael Sr. forcibly closed the door and blocked it, during which deputies observed Michael Sr. verbally communicating with the

---

[8] As noted *supra*, the County Defendants have provided exhibits attached to their pleadings which concern copies of the underlying criminal proceedings to the issues raised in this civil action. When ruling on a motion to dismiss, a court may consider the factual allegations made in a plaintiff's complaint, any exhibits attached therefore, matters attached to the motion to dismiss that are authentic and integral to the complaint, and any matters of public record of which a court may take judicial notice. Blankenship v. Manchin, 471 F.3d 523, 526, n.1 (4th Cir. 2006) (finding the matters attached to the motion to dismiss were authentic and integral); Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004) (public records).

Decedent. (Id.) When deputies were able to force the door open again, gunfire from within the residence began, and two deputies, Defendants Cremeans and Johnston, were struck multiple times. (Id.) Michael Sr. was still actively blocking or attempting to block the deputies' entry into the residence before being forcibly removed from the residence. (Id.) Deputies briefly maintained their position prior to entering the residence. (Id.)

## PLAINTIFFS' FACTUAL ALLEGATIONS

As noted *supra*, Plaintiffs filed their Complaint invoking federal question jurisdiction claiming entitlement to relief under 42 U.S.C. §§ 1983 and 1988 alleging that Defendants violated Plaintiffs' rights under the Fourth and Fourteenth Amendment to the extent that Defendants employed excessive force, unreasonable search and seizure, willful false arrest, false imprisonment, fabrication of evidence, tampering with evidence, false accusations of a crime, in addition to other acts of misconduct.[9] (ECF No. 1 at 2)

Plaintiffs allege that on October 30, 2019, they were about to wake up the Decedent for dinner when suddenly, ten CCSD deputies surrounded their residence to execute a misdemeanor search warrant, namely: Defendants Vincent, Johnston, Cremeans, Hinchman, Rodgers, Siebel, Render, White, and Parsons. (Id. at ¶ 30) Plaintiffs (specifically Laura) allege hearing "5-6 loud pounding thuds at the back kitchen door" and "5-6 men pointing assorted firearms at me" and yelling "Open the door!" multiple times (Id. at ¶¶ 33, 34, 42) Because Plaintiffs' dog reached the door first, Laura attempted to restrain it and told Defendant Vincent that she was going to put her dog up first. (Id. at ¶ 34) Plaintiffs allege that Defendant Johnston had a door ram and hit the upper

---

[9] Plaintiffs have also contemporaneously filed a Complaint in a separate action before this Court involving the same Defendants and mirroring the allegations discussed herein, however, Plaintiffs are pursuing their claims in their capacities as administrators of the Estate of Michael L. Pinkerman, Jr. (See Michael L. Pinkerman, Sr., Administrator, Laura J. Pinkerman, Administratrix, of the Estate of Michael L. Pinkerman, Jr. vs. Cabell County Commission, *et al.*, civil action number 3:21-cv-00580)

part of the back kitchen door causing glass to go everywhere. (Id. at ¶ 35) During this time, Michael Sr. came into the kitchen from the bathroom while deputies were yelling at them to open the door, although Michael Sr. was unable to open the door. (Id. at ¶¶ 36, 45, 46) Plaintiffs allege that while Michael Sr. struggled to open the door, Defendant Vincent yelled at him if he was armed and whether the Decedent was there. (Id. at ¶¶ 43-46) Plaintiffs then allege that the Decedent "rushed" into the kitchen from his bedroom, when they hear a deputy say, "Gun!", although Plaintiffs state they did not see a gun in the Decedent's hands. (Id. at ¶¶ 37, 46) Plaintiffs then allege that suddenly the deputies outside opened fire into their house, striking Michael Sr.'s right hand and side, and the Decedent multiple times. (Id. at ¶¶ 37, 38, 46, 47) After the initial shooting in the kitchen, Plaintiffs allege Michael Sr. advised the deputies that he had been hit, they told him to open the door, and forcing the dead bolt open, Michael Sr. was able to unlock the door and was ordered outside by Defendant Vincent. (Id. at ¶ 47)

Plaintiffs allege that once outside of their house, Defendant Rodgers "begins assaulting [Michael Sr.], using his knee" and handcuffs him forcefully, hurting his right arm and shoulder. (Id. at ¶ 48) Though Defendant Rodgers warned Michael Sr. not to resist arrest, Michael Sr. denies that he resisted arrest, because he did not know he was going to be handcuffed. (Id.)

As Plaintiffs were being led away from their house by Defendant Neil, Michael Sr. alleged that he saw officers breaking their dining room storm door and dining room window and then "2 seconds later I hear more gunfire. I look at my Wife saying 'They just Murdered our son!' " (Id. at ¶ 49) Michael Sr. alleges that a black Cabell County Sheriff's pickup truck was backed up to his son's bedroom window and "either" Defendant Stephens or defendant deputy John Doe was standing in the truck pointing a rifle at his son's bedroom window. (Id. at ¶ 50) Plaintiffs indicate they did not understand what was going on. (Id. at ¶¶ 40, 47, 50)

Michael Sr. alleges that the handcuffs were put on him too tight, and that Defendant Neil would not loosen them, out of fear for his own safety; Michael Sr. "informed Deputy Neil that if I wanted to hurt him that these handcuffs wouldn't stop me from doing that. I tell him that I'm not going to hurt him, I stated I knew where he lived." (Id. at ¶ 51) Michael Sr. again advised Defendant Neil that his hand was bleeding, and his side was still hurting – Defendant Neil led him to an ambulance medic who confirmed that Michael Sr. had a deep graze wound that needed to be treated. (Id.)

Michael Sr. alleges that Defendant McNeil of the Barboursville Police Department was present at the scene and that he "helped with get[ting] the Decedent [f]ired from his job at the CCERC on May 9, 2019." (Id. at ¶ 52) Defendant McNeil informed Plaintiffs that the Decedent "is no longer with us." (Id.)

Plaintiffs then allege that Defendant Neil escorted them to Cabell Huntington Hospital and while there, they were interviewed by members of the WVSP who were investigating the shooting incident at their home; Plaintiffs were separated and provided statements. (Id. at ¶ 53) Michael Sr. alleges that he "felt that I had to give this statement" and did not learn until later that he did not have to, however, he informed First Sergeant A.S. Pardue that "all the gunfire was coming into the house", that he was unable to open the door, and that the Decedent was asleep in his room and "probably heard the commotion and rushed in to help." (Id. at ¶ 54) Michael Sr. alleges that "[t]hey keep asking me if Michael Jr. had a gun. At this time I told them that if something like this is happening at a back door we usually come prepared." (Id.) Michael Sr. alleges that First Sergeant Pardue asked questions he "really couldn't answer", he asserts that First Sergeant Pardue did not "like what I had to say." (Id.) Upon discharge from the hospital, Michael Sr. alleged that he was

arrested by four CCSD deputies, and that Defendant McQuaid brought him before a magistrate, and later transported to the Western Regional Jail. (Id. at ¶¶ 54-55)

Michael Sr. alleges that Defendants McQuaid and Cremeans "abused their powers and fabricated evidence to create false Criminal Complaints in the Magistrate Court of Cabell County" against both him and the Decedent. (Id. at ¶ 55) Michael Sr. alleges that Defendant McQuaid filed two "fraudulent" criminal complaints against him: the first is identified at case number 19M06F00814, for felony offense of attempted to commit a felony, first degree murder, "by acting as an accessory before the fact x2". (Id. at ¶ 56) Michael Sr. states that the first criminal complaint alleged the following:

> On October 30, 2019 at approximately 6:33 pm., at (4306) Blue Sulphur Road Ona WV 25545. The suspect encountered deputies from the Cabell County Sheriff's Office who were attempting to serve a search warrant at that location regarding a stolen firearm that his son (Michael L. Pinkerman II) had in his possession earlier on this date. After Identifying themselves and repeatedly advising the suspect to open the door of the residence pursuant to a search warrant, the suspect braced himself against the door. As the deputies continued to advise the suspect to open the door, he was observed having some kind of communication with his son, Michael Lane Pinkerman II (the offender who had an arrest warrant against him for a prior listed crime).

> As the door was breached the suspect forcibly closed the door, again while having verbal communication with his son. As the door was forced open again, gunfire from within the residence began and two deputies were struck multiple times. The suspect was still actively blocking / attempting to block entry into the residence before being forcefully removed from the residence. Deputies maintained their positions for a brief period before successfully entering the residence. The actions of the father, Michael Lane Pinkerman allowed the original suspect of the warrant to attempt to commit murder against Corporal James Johnston, by shooting him multiple times.

(Id.) Michael Sr. alleges that Defendant McQuaid filed a second "fraudulent" criminal complaint against him that concerned the shooting of Defendant Cremeans. (Id.)

9

Plaintiffs also allege that on October 31, 2019, Defendant Blatt asked them to provide their safe combinations to determine if there were bombs in the house. (<u>Id</u>. at ¶¶ 57-61) Plaintiffs allege there were no bombs, only hunting rifles, but did not provide the combination to Defendant Blatt and denies he gave consent to anyone to open his safes. (<u>Id</u>.) Plaintiffs assert that an antique safe they had contained "precious antique bibles and blown glass items", and allege Defendant Blatt used "perjury" and "false information" about a "fake" bomb threat used to obtain "illegal" search warrants to get into their safes. (<u>Id</u>. at ¶ 59, 70) Plaintiffs allege that Deputy Jason Howerton had 911 dispatch to have A1 Wrecker retrieve a safe through their dining room, and that the safe was later destroyed in a fire. (<u>Id</u>. at ¶ 61) Plaintiffs further indicate that Defendant McNeil "created" this bomb threat and that "[w]e feel the [b]omb [t]hreat was a way to get time for [Defendant] Zerkle to see just how bad his deputies messed up or to find a way to get into our safes fishing for evidence to justify there [*sic*] Horrendous actions here." (<u>Id</u>. at ¶ 70)

Plaintiffs next allege that Defendant Adkins "illegal found" three stolen firearms in their safe. (<u>Id</u>. at ¶ 62) Plaintiff then allege that Defendant McQuaid "using falsified information" to establish probable cause for a search warrant to access another safe that Magistrate Goheen granted; on November 6, 2019, Defendant McQuaid caused a third fraudulent criminal complaint to be filed against Michael Sr., case number 19M06M05644, concerning stolen guns, and receiving and transferring stolen goods "x3" – Michael Sr. asserts that the alleged three stolen firearms belonged to Joseph Hinchman, a friend of his during high school, who is also related to Defendant Hinchman. (<u>Id</u>. at ¶¶ 62-63) These charges were dismissed on November 14, 2019 with no explanation. (<u>Id</u>. at ¶ 63)

Plaintiffs allege that Defendants Cremeans, McQuaid, Adkins, and Blatt abused their power by using perjury and false information concerning the alleged stolen firearms to obtain the search warrants, ultimately causing the Decedent's death. (Id. at ¶ 64-69)

Plaintiffs allege that Defendant Zerkle used the media, including social media, to make false statements to "cover up" their crimes and to justify the murder of the Decedent. (Id. at ¶¶ 71-76)

For Plaintiffs' "First Cause of Action" pursuant to 42 U.S.C. § 1983 (hereinafter referred to as "Count 1"), they allege that Defendants McQuaid, Vincent, Cremeans, Johnston, Hinchman, Rodgers, Siebel, White, Render, Parsons, McFann and Neil executed an "illegal no knock raid" and fired forty-two (42) rounds into their home, wounding both Michael Sr. and the Decedent. (Id. at ¶¶ 77-80); due to the damage to their door caused by Defendant Johnston, Plaintiffs "were not able to comply with their illegal demands and illegal method of entry" (Id. at ¶ 81). Further, Plaintiffs allege that "it's unknown" how many times the Decedent was shot, stating that he was first shot at the back kitchen door and that the second shooting occurred "in the forced entry at the side dining room door" where he was fatally shot while standing at his bedroom door. (Id. at ¶ 82) Plaintiffs allege that Michael Sr. was shot four (4) times and Laura narrowly escaped being shot herself had it not been for Michael Sr. pushing her out of the way. (Id.) Plaintiffs further allege Defendants McQuaid, Vincent, Cremeans, Johnston, Hinchman, Rodgers, Siebel, White, Render, Parsons, McFann and Neil violated Plaintiffs clearly established procedural and substantive rights to be free from excessive force, under the Fourth Amendment. (Id. at ¶¶ 84, 85) Plaintiffs allege that they have suffered from personal injuries, emotional distress, medical expenses, as well as severe pain, and are entitled to recover damages for same. (Id. at ¶ 86)

For Plaintiffs' "Second Cause of Action" under Section 1983 (hereinafter referred to as "Count 2"), they allege "the individual Defendants", while acting under color of law and within the scope and course of their official duties as members of the CCSD, violated Plaintiffs' "clearly established" constitutional rights to be free from unreasonable and unlawful searches and seizures. (Id. at ¶¶ 89, 90) Plaintiffs assert that specifically, Defendant Cremeans illegally obtained a search warrant on their home without probable cause in violation of the Fourth Amendment. (Id. at ¶ 91) Plaintiffs further assert that the judge would not have issued the warrant had it not been for the "deliberate falsehoods" and "dishonesty" and that the Defendant Sheriff's deputies "knew that search warrant was unreasonable and not authorized prior to the attack on 4036 Blue Sulphur Rd. and after." (Id. at ¶ 92) Plaintiffs indicate that Defendants "are liable based on their failure to intervene to prevent the CCSD Defendants from violating" Plaintiff's constitutional rights and that the County Defendants, namely, Adkins, Enochs, Cremeans, Blatt, and McQuaid, conspired to obtain illegal search warrants in violation of Plaintiff's Fourth and Fourteenth Amendment rights. (Id. at ¶¶ 93-94) Plaintiffs further allege that Defendants Adkins and Enochs failed to properly supervise their subordinates, resulting in the loss of their only son, entitling Plaintiffs to general, special, and exemplary damages, as the County Defendants actions were motivated by malice and/or involved reckless or callous indifference to Plaintiffs' rights. (Id. at ¶ 95-97)

For their "Third Cause of Action" (hereinafter referred to as "Count 3"), which concerns negligence and invasion of privacy under West Virginia law, Plaintiffs allege "Deputies took and Shared Unnecessary Photos on their personal cell phones of [the Decedent's] body as he lay on his bedroom floor. Many of which had no conceivable investigatory purpose and were focused directly on the victims' body." (Id. at ¶¶ 98-99) Plaintiffs allege that "Cabell County Sheriff and WV State Police employees" shared these photos with other "government personnel and to their friends",

and specifically allege that Defendant Losh and "the Assistant Director of the CCERC Dan Marcum" shared these images. (Id. at ¶ 100) Plaintiffs allege that the "Sheriff's deputies, Fire Department, [Defendant Losh], and the CCERC Dan Marcum's] conduct was outrageous, causing Plaintiffs severe emotional distress; Plaintiffs further allege that some deputies also shared these photos who had nothing to do with investigating the incident and that "[o]ne deputy even showed off photos of [the Decedent's] body at a bar[.]" (Id. at ¶¶ 101-106)

Plaintiffs' "Fourth Cause of Action" under Section 1983 (hereinafter referred to as "Count 4") concerns Defendants Zerkle and Cabell County Commission, and allege that these Defendants are responsible for the acts of their deputies, had a "custom, policy and practice" of allowing deputies to use excessive force, including "No Knock Raids", and knew their actions were in violation of Plaintiffs' constitutional rights. (Id. at ¶¶ 107-125) Plaintiffs allege this custom, policy, and practice caused the injuries to Plaintiffs, including the Decedent's death. (Id.) Plaintiffs also allege that Defendants Zerkle and Cabell County Commission maintained a custom, policy, and practice that: encouraged deputies to violate citizens civil rights, including conducting unreasonable searches and seizures, filing false police reports, and subjecting citizens to unlawful shootings and excessive force; not investigate police misconduct or to discipline deputies; and failed to train and supervise deputies. (Id.) Plaintiffs allege that this custom, policy, and practice violated their constitutional rights. (Id.)

For their "Fifth Cause of Action" (hereinafter referred to as "Count 5"), Plaintiffs allege that "all Defendants" deviated from their duties of care as law enforcement officials, and were negligent and grossly negligent in their actions. (Id. at ¶¶ 126-128) Plaintiffs identify several instances of Defendants' violation of their duties, including but not limited to: failing to ensure the safety, security, freedom and well-being of Plaintiffs; failing to adhere to proper procedures, such

as ensuring "sufficient cause to shoot somebody through a door inside their home", identifying themselves as law enforcement officers when serving a misdemeanor search warrant; failing to use discretion prior to and during the shooting and to consider other, lesser, means of force; reporting false information or failing to correct same; publishing or causing to be published false information; and "acquiescing and refusing to come forward with evidence and information that would incriminate [Defendant Cremeans] and to "correct the false narrative concerning Mr. Pinkerman". (Id.) Plaintiffs assert that because of Defendants' negligence and gross negligence, they are entitled to damages, including past and future medical expenses as Plaintiffs have suffered from physical and emotional damages that are ongoing. (Id.)

For their "Sixth Cause of Action" (hereinafter referred to as "Count 6"), Plaintiffs claim "supervisory negligence" against Defendants Adkins and Enochs for their failure to train and supervise Defendants McQuaid, Vincent, Cremeans, Johnston, Hinchman, Rodgers, Siebel, White, Render, Parsons, Stevens, McFann, and Neil, as this breach of duty caused harm to Plaintiffs, including physical pain and emotional distress, humiliation, indignity, including negligent infliction of emotional distress as a result of witnessing the shooting death of the Decedent; Plaintiffs state they are also entitled to punitive damages for gross negligence. (Id. at ¶¶ 129-134)

As it relates to the "Employing Defendants", Plaintiffs assert their "Seventh Cause of Action" (hereinafter referred to as "Count 7"), which concerns negligent and gross hiring, supervision, training, and retention claims. (Id. at ¶¶ 135-137) Plaintiffs allege that the "Employing Defendants" had a duty to hire competent and fit employees, perform background checks, require appropriate education, experience, and other qualifications, as well as to properly train, supervise, and terminate unfit employees. (Id.) Plaintiffs allege these "Employing Defendants" breached their duties in a negligent and gross and reckless manner, for instance, by failing to ensure their

employees "complied with procedures regarding the incidents such as those described herein", including how to respond to a home and identifying themselves as law enforcement officers, failing to ensure employees knew the difference between a "Knock and Announce Search Warrant and a No Knock Raid", and failing to ensure their employees accurately communicated information. (Id.)

For their "Eight[h] Cause of Action" (hereinafter referred to as "Count 8"), Plaintiffs outline the damages they have incurred as a direct and proximate result of Defendants actions, which include "legally presumed and special damages, in addition to actual, compensatory, general, and nominal damages." (Id. at ¶¶ 138-144) Plaintiffs assert their special damages include but are not limited to medical expenses and expenses related to repair and replacement for property damages to their home. (Id.) Michael Sr. specifies that he was "shot multiple times in his hip" and "brutally attacked and forced to endure pain inflicted by [Defendant] Rodgers, forced to wear handcuffs that were to[o] tight." (Id.) Michael Sr. further asserts that Defendant Neil refused to loosen his handcuffs despite being requested multiple times. (Id.) Michael Sr. alleges that he has suffered physical harm, disability, pain, and suffering, as well as nerve damage and pain in his wrist and has incurred past and future medical expenses. (Id.) Both Plaintiffs allege to have suffered emotional harm as well, including "mental shock", "severe and extreme emotional distress, anxiety, grief, and other unimaginable devastation due to witnessing the brutal murder of their only son[.]" (Id.) Plaintiffs allege that Defendants did not intend to help the Decedent, but "to finish him off." (Id.) Plaintiffs have also suffered from loss of a relationship and companionship with the Decedent, and have suffered from "reputational harm caused by Defendants' false narrative and smear campaign of our character" "[t]o cover up their brutal destruction of a family." (Id.)

In addition to the property damages to their home, Plaintiffs allege "money and items stolen" from their safes that have not been returned, including "money missing $18,500.00 and a large bottle of Valium pills." (<u>Id</u>.) Plaintiffs explain that

> Papaw got the pills from his sister and was taking them. Stayed in a comatose state, I found them, took them away from him. Put them in the safe because of the kind of pills they were, then forgot about them. These items were kept inside of a smaller safe, inside of our big Living room Champion Safe. We kept it in there for double protection in case of a fire. The key stayed in it. When our seized items were returned. The back of this small safe was cut open and the key was missing. The other missing items were Michael Jr.'s big Trauma Bag, 6 clear 9mm high capacity magazines, a pair of handcuffs, a tactical fighting dagger, a Motorola hand held radio with Mic. The Blue Lives Matter license plate that was on the front of Michael's vehicle and 2 WVSP support Stickers, taken off the inside windshield of both our vehicles.

(<u>Id</u>.) Plaintiffs allege that they no longer feel safe and secure in their home, have no joy, future, or grandchildren to look forward to. (<u>Id</u>.)

In their prayer for relief, Plaintiffs ask this Court to grant them judgment against Defendants for compensatory, general, actual, special, nominal and punitive damages, plus pre and post judgment interest, including attorney's fees and costs if applicable, as well as "any interest made on the $300,000 Cash Only Bond that was paid by The Hermitage of the Holy Cross Monastery due to the knowingly fraudulent charges brought against Michael L. Pinkerman Sr." and for such other relief as this Court deems just and proper. (<u>Id</u>. at ¶ 145)

### Defendants WVSP and Losh's Argument for Dismissal

As an initial matter, these Defendants contend that neither were involved during the execution of the search warrant during the events allegedly occurring on October 30, 3019, and that Plaintiffs have only specifically alleged that Defendant Losh was involved in the post-incident investigation, taking photos of the decedent, Michael Jr., and showed these photos to other

governmental personnel and friends – Plaintiffs have alleged no substantive claims against Defendant WVSP. (ECF No. 34 at 2)

These Defendants argue that Plaintiffs claims as alleged against them fail as a matter of law because in their official capacities, they are immune from liability under Section 1983 and because Defendant WVSP is a state agency and Defendant Losh is an employee of the state agency, neither can be sued under Section 1983 as they are not considered "persons" amenable to such suits. Thus, Plaintiffs Section 1983 claims must be dismissed. (Id. at 5-6)

Regarding Plaintiffs' negligence and gross negligence claims against these Defendants, including negligent and gross negligent hiring, supervision, training, and retention against Defendant WVSP, despite such claims against Defendant WVSP fail under Section 1983, both Defendants enjoy qualified immunity because West Virginia law bars negligence claims; additionally, this Court has previously held such claims are barred. (Id. at 6-7) Further, Plaintiffs have alleged Defendant Losh acted intentionally, by sharing photos of the decedent with government personal and friends, therefore, their claims of simple negligence fail as a matter of law. (Id. at 8-9)

Regarding Plaintiffs' claims of invasion of privacy as they relate to the decedent, Defendants argue that they lack standing to pursue such claims. (Id. at 9) Given that Plaintiffs allege that Defendant Losh violated the decedent's privacy by taking photographs and sharing them with other governmental personnel and friends, Plaintiffs have failed to plead an injury in fact as required under law. (Id. at 9-10) Even if Plaintiffs sued as administrators or representatives of the decedent's estate, a claim for invasion of privacy is a personal action that does not survive the death of an individual at common law or under statute. (Id. at 10) Therefore, this claim fails as a matter of law and should be dismissed. (Id.) As an additional matter, Defendants argue that even

if Plaintiffs had standing to pursue an invasion of privacy claim, West Virginia statute only provides a one-year statute of limitations for such personal tort claims, which has long expired. (Id. at 10-11)

Defendant Losh asserts that Plaintiffs' Section 1983 claims against him individually also fail as a matter of law, as there are no substantive allegations against him – Plaintiffs have only alleged deputies of the Cabell County Sheriff's Department were involved in the execution of the search warrant, as well as in the alleged use of force and illegal entry. (Id. at 11-12) Because Defendant Losh was not present for the entry or use of force, these Section 1983 claims against him should be dismissed. (Id. at 12) Defendant Losh further asserts that Plaintiffs' generalized negligence claims against him, involving breaches of duty of care related to the shooting incident, entry of Plaintiffs' residence and alleged falsification of police reports, as none of these have been specifically plead against Defendant Losh, thus, those claims should be dismissed as well. (Id.)

**Defendants Village of Barboursville and McNeil's Argument for Dismissal**[10]

These Defendants (referred to collectively as "the Barboursville Defendants") assert that the Barboursville Police Department is not a properly named party in this action, is not a separate suable entity, and therefore, this party should be dismissed from this action. (ECF No. 70 at 6-7) The Barboursville Defendants further point out that neither are alleged to have been involved in obtaining or executing the search warrant, in the alleged forced entry or excessive force claims as set forth in Counts 1 and 2 of Plaintiffs' Complaint; in sum, Plaintiffs have pled no factual allegations against Defendants Village of Barboursville or McNeil upon which relief can be granted, thus dismissal is appropriate. (Id. at 1-2, 6-9)

---

[10] The undersigned focuses on the arguments set forth in the "Amended" Memorandum of Law in support of these Defendants' motion to dismiss, though from all appearances, it does not seem to deviate substantially or substantively from the initial memorandum of law.

Even if the Court were to find that Plaintiffs have alleged a viable Fourth Amendment claim against Defendant McNeil, he is entitled to qualified immunity: there is no evidence he violated any clearly established constitutional right, and there is no allegation that he used any level of force against Plaintiffs or the Decedent, let alone searched Plaintiffs' property. (Id. at 10-11)

Regarding Plaintiffs' claims concerning a "custom and policy" envisioned by Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978), the Barboursville Defendants argue that Plaintiffs' allegations fail to demonstrate any constitutional violations as related to these Defendants and such claims should also be dismissed. (Id. at 11-12)

Regarding Plaintiffs' invasion of privacy claims, no allegations concern the Barboursville Defendants, therefore this claim should be dismissed. (Id. at 13)

Regarding Plaintiffs' negligence claims, the Barboursville Defendants assert statutory immunity under the West Virginia Governmental Tort Claims and Insurance Reform Act, notwithstanding that Plaintiffs' claims sound in intentional acts. (Id. at 13-15) None of these alleged negligence claims concern the Barboursville Defendants, regardless, W. Va. Code § 29-12A-5(a)(5) affords immunity to the Village of Barboursville, to the extent Plaintiffs allege any failure on its end to provide police, law enforcement or fire protection to the public. (Id. at 15-16) The Barboursville Defendants argue that the statute endorses the common law special duty rule and does not immunize a breach of a special duty to provide, or a method of providing, such protection to a particular individual, however, the only allegation Plaintiffs make against Defendant McNeil is that he informed Plaintiffs that their son was deceased and that he made a "bomb threat" after the relevant events in question. (Id.) Neither of these allegations form the basis for a special duty owed to Michael Sr. and thus, these claims should be dismissed. (Id. at 16)

19

Further, Defendant McNeil is entitled to immunity on an individual basis because W. Va. Code § 29-12A-5(b) provides that employees of political subdivisions are immune from personal tort liability, and none of Plaintiffs' allegations support any of the enumerated exceptions endorsed by this statute. (Id. at 16-17) Therefore, the negligence claim against Defendant McNeil in his individual capacity should be dismissed. (Id. at 17)

As for Plaintiffs' claims surrounding negligent hiring, supervision, training, and retention, again, the Barboursville Defendants point out that none of the allegations set forth in Plaintiffs' Complaint provide any foundational or factual basis for any of these claims against these Defendants whatsoever; further, Plaintiffs have not pled any facts supporting any causal connection between these claims implicating the Barboursville Defendants to Plaintiffs' injuries. (Id. at 17-20) Accordingly, these claims against the Barboursville Defendants should be dismissed. (Id. at 20)

**Defendants Cabell County Commission, Sheriff Charles Zerkle, Lt. Michael Adkins, Cpl. Jared Cremeans, Lt. Dale Enochs II, Deputy Brandy Hinchman, Cpl. James Johnston, Sgt. Terry McFann II, Robert McQuaid, Deputy Hunter Neil, Deputy Joshua Parsons, Deputy Nathaniel Rodgers, Sgt. Matthew Siebel, Deputy Preston Stephens, Sgt. Steven Vincent, and Lt. Kevin White's Argument for Dismissal**

For starters, Defendant CCSD contends that it is not a legal entity capable of being sued, a finding that has been consistently upheld in this District and the Northern District, therefore, this Defendant should be dismissed from this suit. (ECF No. 74 at 7-8) The County Defendants also argue that this Court should abstain from considering Plaintiffs' claims to the extent that they are derivative under the Younger Abstention Doctrine. (Id. at 8-9) The County Defendants point out that Michael Sr. is currently facing state criminal charges for acts directly related to the underlying allegations, *supra*. (Id. at 9; ECF No. 73-2)

Regarding Plaintiffs' Section 1983 claims for excessive force, contained in Count 1 of their Complaint, the County Defendants assert that Laura does not have standing to allege such claims on behalf of her husband, or on behalf of the Decedent, and she does not allege that any excessive force was used against her. (ECF No. 7 at 9, 11) Michael Sr. also lacks standing to assert any excessive force used against his son. (Id. at 11)

The County Defendants argue that the allegations do not support an excessive force claim. The County Defendants explain that under the "objectively reasonable" factors endorsed by Graham v. Connor, 490 U.S. 386, 399, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the factual circumstances presented in the underlying criminal matters demonstrate that the individual County Defendants were attempting to execute a high-risk warrant, involving stolen firearms, where the Decedent began firing at the deputies. (Id. at 9-11) Plaintiffs do not identify any County Defendant against whom the excessive force is alleged, and assuming Plaintiffs were to do so, the individual County Defendants have qualified immunity against such claims under the circumstances presented in this case. (Id. at 12) The County Defendants correctly assessed the danger posed by the Decedent which authorized the use of deadly force; Michael Sr. had been at the entry way of the door and refused commands to open the door; Michael Sr.'s wounds are consistent with the deputies' lawful use of deadly force. (Id.)

Michael Sr.'s allegations against Defendant Rodgers describe a take-down maneuver to get him into custody, and even after being handcuffed, Michael Sr. further alleges threats against Defendant Neil; no injuries related to the handcuffing are alleged, however. (Id.) None of the actions taken by these County Defendants rise to the level of constitutional deprivation, therefore, Plaintiffs' Count 1 claims for excessive force should be dismissed. (Id. at 13-14)

Regarding Plaintiffs' Count 2 claims concerning illegal search and seizure, the County Defendants argue that they improperly rely upon mere labels or conclusions that the search warrants were obtained by false information or perjury without alleging any supporting facts, however, the search warrants were obtained by a magistrate finding probable cause. (<u>Id</u>. at 14-15) Because this claim is insufficiently pled, this claim should be dismissed. (<u>Id</u>.)

The County Defendants further contend that Plaintiffs' invasion of privacy claim is foreclosed by the applicable one-year statute of limitations, and should be dismissed. (<u>Id</u>. at 15-16)

Defendants Zerkle and the Cabell County Commission assert that Plaintiffs' <u>Monell</u> claims, *supra*, as set forth in Count 4 that concern an alleged custom, policy and/or practice also fail as they rely upon mere conclusory allegations without further factual support. (<u>Id</u>. at 16-17) Further, no-knock warrants are not *per se* unconstitutional, and Plaintiffs' own allegations show there were in fact knocks and an announcement. (<u>Id</u>. at 16)

Regarding Plaintiffs' claims set forth in Counts 5, 6, and 7 of their Complaint, which concern supervisory negligence against Defendants Adkins and Enochs as well as general allegations of negligence and gross negligence, the County Defendants argue they are immune from such claims as provided under the West Virginia Governmental Tort Claims Act. (<u>Id</u>. at 17-18) Further, Plaintiffs fail to allege any facts concerning hiring, supervision, training, or even describe how these Defendants failed to investigate any of the deputies involved herein. (<u>Id</u>. at 18) Again, Plaintiffs only set forth conclusory allegations which is insufficient to support such claims, and therefore, these claims fail as a matter of law and should be dismissed. (<u>Id</u>. at 18-19)

**Plaintiffs' Response to Defendants WVSP and Losh's Motion**

Plaintiffs appear to reassert their Counts 1 and 2 claims against these Defendants as set forth in their Complaint, but also suggest that discovery will assist in clarifying any questions concerning them. (ECF No. 76) However, regarding Count 3 concerning their invasion of privacy claim, Plaintiffs insist that Defendant Losh shared pictures of the crime scene that Plaintiffs were unaware of until they receive "the first small batch of Discovery January 15, 2021" and asserts that his cause of action accrued then. (Id. at 3-4) Plaintiffs allude to "3 CD's" that contained "793" crime scene pictures, and "265 pages of repetitive information" that included "60 pages of low quality Black and White Photos" they ostensibly received from the prosecuting attorney during the underlying criminal proceedings. (Id. at 4) Plaintiffs then state that "[b]ut for the [prosecuting attorney] to have claimed they never received a copy of the [a]utopsy [r]eport this leaves me to believe that the only one who would have done this was [Defendant] Losh himself." (Id.)

Plaintiffs specify that ¶¶ 110-111 in Count 4, pertain to Defendants WVSP and Losh, and insists Defendant WVSP is responsible for its employees, and that these Defendants violated their constitutional rights. (Id. at 4-5) Plaintiffs specify that ¶¶ 126-127 and subsections identified as "j., k., l., m., n." in Count 5 apply to Defendants WVSP and Losh. (Id. at 5-6) Plaintiffs allege that Defendant Losh "and other WVSP employees" improperly relied upon "unverified" and "uninvestigated" statements provided by Defendant Zerkle and "his" deputies and further allege that Defendant Losh "ignored, suppressed and tampered with [e]vidence" related to the investigation surrounding the underlying criminal proceeding. (Id. at 6-7) Plaintiffs suggest irregularities concerning the alleged stolen firearms and reassert there was no probable cause supporting the search warrant issued regarding the stolen Beretta on October 30, 2019. (Id. at 7-8)

Plaintiffs assert that the investigation is ongoing. (Id. at 7)

Plaintiffs appear to simply restate their claims as set forth in Count 7. (Id. at 8-9)

Plaintiffs allege that they included Defendants WVSP and Losh because the "purpose of qualified immunity is **to protect all but 'the plainly incompetent or those who knowingly violate the law**[]' " and state that "[Defendant] Losh is either incompetent, or knowingly had violated the law." (<u>Id</u>. at 9) (**bold** in original)

Plaintiffs appear to quote or cut and paste caselaw that supports the proposition that the Eleventh Amendment does not bar a claim for damages against a state official where there has been a deprivation of a federal right. (<u>Id</u>. at 10-11)

Plaintiffs apologize to the Court and to defense counsel acknowledging that they possess discovery that can back up their claims, but note that there is additional discovery forthcoming and will supplement upon receipt. (<u>Id</u>. at 11-12)

## Plaintiffs' Response to the Barboursville Defendants

Plaintiffs restate that Defendant McNeil informed them that their son had died and indicate that the bomb threat was "instigated" by this Defendant that did not make "since" [*sic*] to Plaintiffs until they received discovery on January 15, 2021. (ECF No. 78 at 1, 2) Plaintiffs indicate that Defendant Zerkle "gave" the duty to supervise "his own men" to Defendant McNeil, "who is operating out of his jurisdiction." (<u>Id</u>. at 2) Regarding their claims against the Barboursville Defendants, Plaintiffs oppose their motion to dismiss and concede they "don't know all the facts behind who and why other Law Enforcement from different Departments got involved", but "[a]ll I know is they were here and participated in some way." (<u>Id</u>. at 5) Plaintiffs state that Defendant McNeil "did something that is questionable that has caused reason for us to believe he was involved in a conspiracy to cover up a Death of an innocent person." (<u>Id</u>.) Plaintiffs indicate that further discovery will uncover additional wrongdoing by Defendants and that Defendant McNeil violated his constitutional rights; Plaintiffs reassert their claims in Count 5 concerning negligence

and gross negligence as set forth in ¶ 127 of their Complaint pertain to Defendant McNeil. (Id. at 6) Plaintiffs indicate that they will rely on discovery concerning their claims under Count 7 and appear to suggest that these Defendants' reliance on qualified immunity is being abused. (Id. at 6-7)

Regarding the assertion that the Barboursville Police Department is an improper party, Plaintiffs ask the Court "for mercy" to allow them "to fix this." (Id. at 5)

### Plaintiffs' Response to the County Defendants' Motion to Dismiss

Plaintiffs oppose the County Defendants' motion and assert that the discovery they have received thus far from the prosecuting attorneys proves that the County Defendants' version of events is untrue. (ECF No. 79 at 1-2) Plaintiffs appear to concede that the CCSD is an improper party and acknowledge the correct spelling of Defendant Stephens' name. (Id. at 3)

Plaintiffs concede that there are pending criminal proceedings against Michael Sr., however, Plaintiffs contend that three exceptions to the Younger Abstention Doctrine are present to the extent that they have pled bad faith and harassment and indicate that the underlying criminal prosecution brought in state court was the product of both, and further indicate that they experienced bias during the underlying criminal state court proceedings. (Id. at 4) Plaintiffs describe issues regarding discovery and delays in the underlying criminal matter (Id. at 4-8) and state that they are still waiting on the evidence but know that the charges against Michael Sr. will be dropped (Id. at 8).

Plaintiffs state what happened at their home is a "prime example" of excessive force and unlawful search and seizure: Michael Sr. has "a bullet in his chest"; the Decedent was shot multiple times with no chance to comply or surrender; and Laura endorses having panic attacks because of what happened that day. (Id. at 8-9)

Plaintiffs again assert their invasion of privacy claim is timely and that through discovery received on January 15, 2021, they learned that Defendant Losh shared photos of the crime scene and that "[i]t wasn't too long after that when we were told of Defendant Hinchman sharing his pictures that he had taken." (Id. at 9) Plaintiffs indicate that there were numerous photos of the Decedent's "naked body" laying on the Medical Examiner's table that were taken by Defendant Losh. (Id. at 10) Plaintiffs also indicate that "[t]hey had plenty of photos showing the deceased body of [the Decedent] laying on his bedroom floor in his underwear. This is either in retaliation of 2 Deputies getting shot or they didn't want anyone to know that we weren't ready and waiting as [Defendant] Zerkle had stated in his statements to the Media and the World." (Id.)

Plaintiffs appear to indicate that the County Defendants, namely Zerkle, Adkins and Enochs, were negligent in supervising to the extent that they failed to conduct a proper investigation. (Id.)

Plaintiffs appear to question their own counsel's assistance in the underlying criminal case and mention that they are still waiting on evidence and the last hearing they had in state court was on October 27, 2021. (Id. at 11) Plaintiffs indicate they hoped this civil action would "help" them obtain additional evidence to get the criminal charges dismissed. (Id.)

**Defendants WVSP and Losh's Reply to Plaintiffs' Response in Opposition**

These Defendants emphasize that Plaintiffs' Response relies on facts or allegations that concern other Defendants in this action, and maintain that Plaintiffs' negligence claims in Counts 4 and 6 should be dismissed against them due to their qualified immunities to such claims. (ECF No. 80 at 1-2) Defendants WVSP and Losh argue that Plaintiffs lack standing to pursue their invasion of privacy claim and such claims cannot be brought on behalf of the Decedent; in any event, Defendant Losh denies performing the autopsy and had no control over the discovery

process in the criminal proceeding, when Plaintiffs allegedly learned of the photographs taken of the Decedent. (Id. at 2-3) Plaintiffs have failed to allege a plausible Section 1983 claim, as alleged in Counts 1 and 2, against these Defendants and cannot rely upon discovery to search for a plausible claim against them. (Id. at 4) Plaintiffs' negligence claims set forth in Counts 5 and 6 also fail as a matter of law against Defendant Losh, as these are not actionable under Section 1983. (Id. at 5)

### The County Defendants' Reply

Because Plaintiffs failed to respond to specific arguments raised in the County Defendants' motion to dismiss, this Court should deem those arguments as conceded or that such causes of action waived. (ECF No. 81 at 2-4) Plaintiffs have at least conceded the point that Defendant CCSD cannot be sued. (Id. at 2) The County Defendants assert that none of the exceptions under the Younger Abstention Doctrine are present that would allow this Court to go forward with hearing this case. (Id. at 5-6) The County Defendants further assert that Plaintiffs knew that photographs of the Decedent were being shared on or about October 30, 2019 during the investigation into the Decedent's death as well as in the underlying criminal matters involving Michael Sr., therefore, the statute of limitations has already expired on their invasion of privacy claim; regardless, Plaintiffs lack standing to pursue this claim and fails as a matter of law. (Id. at 6-8) The County Defendants also argue that Plaintiffs' negligence claims set forth in Counts 5, 6 and 7 of their Complaint also fail as a matter of law and their response failed to put forth any facts to support these claims. (Id. at 8-10)

### The Barboursville Defendants' Reply

These Defendants also contend that Plaintiffs' response failed to cite any allegation in their Complaint that could create a legal cause of action against them, and further, what allegations they

have set forth against these Defendants do not rise to a constitutional violation. (ECF No. 82 at 1-3, 4-5) Additionally, Plaintiffs do not appear to contest the argument that Defendant Barboursville Police Department is an improper party. (Id. at 3) There is insufficient factual allegations to support Plaintiffs' <u>Monell</u> claim or invasion of privacy claim against the Barboursville Defendants. (Id. at 5-6) The Barboursville Defendants similarly argue that Plaintiffs' response does nothing to further their Counts 5 and 7 negligence claims, as there are insufficient facts to support them, and further, these Defendants would enjoy immunity against such claims. (Id. at 6-10)

## "Plaintiffs' Final Remarks" in Response to Defendants' Replies

Plaintiffs indicate that discovery was forwarded to counsel for Defendants and suggest that they "are after" the "truth" of what happened that day. (ECF No. 84 at 2-3) Plaintiffs indicate there is "a problem with the Cabell County Courthouse and the Judicial System" and that Defendant McQuaid "filed fabricated charges against Michael Sr." (Id. at 3) Plaintiffs assert that the charges against Michael Sr. "are just part of the conspiracy to cover up the senseless murder of our son[.]" (Id.) Plaintiffs allege problems with receiving discovery or evidence during the underlying criminal proceedings despite numerous requests for same and indicate bias due to assistant prosecuting attorney Lauren Plymale was married to Defendant McFann. (Id. at 4-5)

Plaintiffs further allege all named Defendants engaged in misconduct, fraud, corruption and/or evidence tampering in the underlying criminal investigation and that additional discovery is necessary "to do a complete [i]nvestigation of what happened at our home." (Id. at 5-7)

While Plaintiffs appear to "understand" that photographs of the Decedent would be shared with other officers involved in the investigation, Plaintiffs take issue with those photos being shared with those not involved in the investigation and indicate they would suffer emotional harm should these photos be shared on the Internet. (Id. at 7-8)

28

Plaintiffs contend that Defendant Cremeans relied upon a search warrant using "unverified information" that led to an "illegally obtained Knock and Announce Search Warrant" that "was executed as a No Knock Raid" resulting in the Decedent's death and Michael Sr. being wounded. (Id. at 8) Plaintiffs dispute that the Decedent shot Defendants Johnston and Cremeans, and state that "[i]f the [e]vidence is showing that the 2 bullets removed from the [two] officers['] vest came from [the Decedent's] Beretta 9mm and the photographs show that [Defendant] Losh removed the alleged bullets from the vest. This proves that [Defendant] Losh has tampered with that evidence." (Id.) Plaintiffs indicate that certain background information about the Decedent was not investigated by the CCSD and disclosed the Decedent's goals, ambitions, interests, and other information. (Id. at 9)

## THE STANDARD

A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25 (1992). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972), *quoting* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992).

Though this Court is required to liberally construe *pro se* documents and hold them to a less stringent standard than those drafted by attorneys[11], liberal construction "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful

---

[11] Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978).

strategies for a party." <u>Miller v. Jack</u>, 2007 WL 2050409, at *3 (N.D.W.Va. 2007) (citing <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. <u>Weller v. Department of Social Servs.</u>, 901 F.2d 387 (4th Cir.1990)).

Moreover, Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing ... entitle[ment] to relief." Fed.R.Civ.P. 8(a)(2). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted...." Fed.R.Civ.P. 12(b)(6).

The required "short and plain statement" must provide " 'fair notice of what the ... claim is and the grounds upon which it rests.' " <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), *overruled on other grounds*, <u>Twombly</u>, 550 U.S. at 562-563)); see also <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." <u>Twombly</u>, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." <u>Id</u>. The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim. <u>Chao v. Rivendell Woods, Inc.</u>, 415 F.3d 342, 349 (4th Cir. 2005) (quoting <u>Iodice v. United States</u>, 289 F.3d 270, 281 (4th Cir. 2002)). Instead, the opening pleading need only contain "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at

555. Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Application of the Rule 12(b)(6) standard also requires that the court " 'accept as true all of the factual allegations contained in the complaint....' " Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (quoting Twombly, 550 U.S. at 555); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court is additionally required to "draw[ ] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

## ANALYSIS

42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. at 685. To state and prevail upon a claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

Construing Plaintiffs' allegations liberally, Plaintiffs repeatedly assert their constitutional rights were violated during the underlying state criminal proceedings, and there is no dispute that these proceedings have not yet concluded. Plaintiffs' Complaint appears to plead numerous claims including false arrest, false imprisonment, malicious prosecution, and violation of due process. They have clearly asserted their Section 1983 and 1988 claims as violations of their Fourth Amendment rights against unreasonable search and seizure as well as excessive force. See, e.g., Brown v. Gilmore, 278 F.3d 362, 367-368 (4th Cir. 2002). Indeed, throughout their pleadings,

Plaintiffs repeat their claim that probable cause did not support the search warrants, asserting that Defendants relied upon fraud or false information to obtain them, and engaged in a multi-department conspiracy against Plaintiffs, including against their deceased son.

It may seem repetitive to note that the parties do not contest that Michael Sr.'s underlying state criminal matter are still pending, and there is no evidence they have concluded in his favor, thus, to the extent his allegations relate to a malicious prosecution claim fail as a matter of law. See Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012); Lambert v. Williams, 223 F.3d 257, 260-262 (4th Cir. 2000).

Regarding Plaintiffs' other claims, particularly those concerning the alleged false information or fabricated evidence that law enforcement relied upon in obtaining the search warrants, Plaintiffs do not specify what information was false or how the evidence was fabricated, except to dispute certain serial numbers or other identifying information concerning the firearms seized from their home. Nevertheless, these claims appear to be sufficient to state plausible Fourth Amendment claims for false arrest or false imprisonment. See Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005). For Plaintiffs to prevail on a claim of evidence fabrication, they must demonstrate proof that Defendants fabricated evidence and that the fabrication resulted in a deprivation of Michael Sr.'s liberty. Id.; see also Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014). Though Plaintiffs' Complaint appears to do little more than allege that the underlying state criminal investigation was rife with fraud and that Defendants engaged in a conspiracy to violate Plaintiffs' Fourth and Fourteenth Amendment rights, even accepting those allegations as true, this suffices to state a plausible claim of fabrication of evidence, which survives summary dismissal. Washington, 407 F.3d at 282.

Moreover, it has long been recognized that the Younger Abstention Doctrine provides that federal courts are discouraged from interfering with a state's pending criminal proceeding, barring extraordinary circumstances. See Younger v. Harris, 401 U.S. 37, 44 (1971); Nivens v. Gilchrist, 319 F.3d 151 (4th Cir. 2003). However, courts have held that rather than abstain and dismissing an action, it may be appropriate to stay such suits especially where a plaintiff seeks monetary relief and that concern the same issues that are pending in a state court. See Stewart v. Beaufort County, 481 F.Supp.2d 483 (D.S.C. Feb. 6, 2007) (court stayed civil rights claims brought under Section 1983 pending a decision in pending state criminal proceeding where issues regarding excessive force would result in simultaneous litigation of the same issues); see also, Lee v. Singleton, 2012 WL 1896062, at *15-16 (D.S.C. Jan. 9, 2012); Suggs v. Brannon, 894 F.2d 274, 279-280 (4th Cir. 1986). Staying a federal action can also help protect a plaintiff's claims for damages that cannot be pursued in the parallel state proceedings and allow for a return to the federal court to reassert claims without being time-barred. See Wirtz v. Oconee County Sheriff's Dept., 2013 WL 5372795, at *5 (D.S.C. Sept. 24, 2013) (internal citations omitted).

It is apparent that Plaintiffs are asserting similar claims of unconstitutional conduct in the state criminal proceedings, and that the state court would address such matters. Since Plaintiffs seek monetary damages for these alleged constitutional violations, and should the state court find the search and search was unlawful, Plaintiffs would be unable to pursue damages in those criminal proceedings, thus, a stay in this case for these claims is appropriate. On the other hand, should the state court find the search, seizure and arrest of Plaintiffs/Michael Sr. were lawful, those decisions would be binding on this Court, and preclude Plaintiffs from asserting these claims were unlawful in a Section 1983 claim for damages. See Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (holding that a state prisoner cannot base a Section 1983 action on a ground

that would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement"). In either case, a stay is appropriate to allow the state criminal proceedings to eventually conclude.

As for Plaintiffs' invasion of privacy claim, to the extent that this claim can be construed as a state tort claim asserted on Plaintiffs' behalf, and not just on behalf of the Decedent, it is noted that such a claim does not involve a deprivation of constitutional rights that is actionable under Section 1983. Graham v. Lott, 2012 WL 1440073, at *5 (D.S.C. Mar. 27, 2012). However, it is also noted that such a state law claim can be heard by a federal court along with federal law claims through the exercise of "supplemental jurisdiction" pursuant to 28 U.S.C. § 1367(a) in the event that the claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"  While the undersigned acknowledges that there is a genuine dispute as to whether Plaintiffs timely brought the invasion of privacy claim, it is clear that should this claim be dismissed to be properly brought before a state court, the applicable statute of limitations has long since expired. See W. Va. Code § 55-2-12; Christmas v. American Cyanamid Co., 578 F.Supp. 63 (N.D.W.Va. 1983). Again, staying this case as it relates to this particular claim may be appropriate given that this issue would be time-barred if refiled in state court. See Wirtz v. Oconee County Sheriff's Dept., 2013 WL 5372795, at *5.

As noted *supra*, Plaintiffs do not contest that that the CCSD is an improper party: "I understand that the CCSD can not [*sic*] be sued." (ECF No. 79 at 3) Because Plaintiffs have asserted a claim for monetary damages against this entity, it follows that Plaintiffs' claim against it should be summarily dismissed; federal courts lack jurisdiction to hear a cause of action against state entities, such as sheriff's departments, based on Eleventh Amendment immunity. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Cromer v.

<u>Brown</u>, 88 F.3d 1315, 1332 (4th Cir. 1996); <u>Ward v. Plymale</u>, 2013 WL 6164277, at *16-17 (S.D.W.Va. Nov. 25, 2013). Notwithstanding Plaintiffs' position on this issue, they have alleged claims against this entity that it has endorsed or promoted a custom, policy, or practice that violates Plaintiffs' constitutional rights, *supra*. Given the significant potential that Plaintiffs may be unable to bring their claims against this entity due to the expiration of the applicable statute of limitations, it appears that it may be best to keep this particular Defendant in this civil action during the pendency of the stay.

As for Defendant Barboursville Police Department, Plaintiffs similarly do not contest that it is an improper party, and "ask the court for mercy and see if they will allow me to fix this" (ECF No. 78 at 5), but Plaintiffs are emphatic that they do not support the Barboursville Defendants' motion to dismiss (<u>Id</u>. at 7). Since Plaintiffs will not be deprived of their claims should this Defendant be replaced with the proper party, the Village of Barboursville, it is appropriate to simply substitute this Defendant for the Barboursville Police Department.

## <u>**PROPOSAL AND RECOMMENDATION**</u>

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that: the Village of Barboursville be substituted for the Barboursville Police Department as the proper party herein; Defendant's motions to dismiss Plaintiffs' claims or causes of action herein be **DENIED** at this time; and Plaintiffs' claims be **STAYED** and **REMOVED from the Court's active docket** until the final termination of Michael Sr.'s pending state court criminal proceedings, at which time Plaintiffs should petition this Court to lift the stay in this action. Plaintiffs should be directed to apprise the Court of the status of the pending state criminal proceedings every six (6) months and warned that failure to do so may result in sanctions, including but not limited to dismissal of this action.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to the *pro se* Plaintiff and to counsel of record.

ENTER: January 26, 2022.



Omar J. Aboulhosn
United States Magistrate Judge